**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jaymie Lyn Nelson,<br><br>    Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV 19-250-TUC-LAB<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 13)

The ALJ did not provide specific, clear, and convincing reasons for discounting Nelson's subjective symptom testimony. The case is remanded for payment of benefits.

PROCEDURAL HISTORY

On January 20, 2015, Nelson constructively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act. (Tr. 32) She alleged disability beginning on January 31, 2013, due to depression, migraines, and DM (diabetes mellitus). (Tr. 32); (Tr. 186)

Nelson's application was denied initially and upon reconsideration. (Tr. 32) She requested review and appeared with counsel at a hearing before Administrative Law Judge

(ALJ) MaryAnn Lunderman on November 28, 2017. (Tr. 49) In her decision, dated April 25, 2018, the ALJ found, based on testimony by a vocational expert, that Nelson was not disabled because there are jobs that she could perform considering her age, education, work experience, and residual functional capacity (RFC). (Tr. 42) Nelson appealed, but on March 5, 2019, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3) Nelson subsequently filed this action appealing that final decision. (Doc. 1)

Claimant's Work History and Medical History

Nelson was 42 years old at the time of the hearing before the ALJ. (Tr. 50) She is a high school graduate and has a certificate from a technical college for medical billing and coding. (Tr. 51)

Nelson worked for two years with Preferred Homecare, a home care services provider. (Tr. 52-53) She "collected the medical records that were needed for the equipment they provided." (Tr. 53) She lost her job when the company moved to Phoenix. (Tr. 53) Previously, she worked for five years as an administrative assistance in a construction company. (Tr. 53) She lost that job during a downsizing. (Tr. 53) Before that, she worked for a year and a half making floral arrangements for a florist in Florida. (Tr. 53) She left that job to move to Tucson. (Tr. 53-54)

At the hearing, Nelson explained that she cannot work due to chronic migraines. (Tr. 54) She describes the migraines as "dull aches across my temple that work[] their way back across the top of my head." (Tr. 56) "Sometimes it'll go down my neck, through my shoulders and it goes up in severity and pain to where I can't think, I can't focus and . . . I get nausea with the majority of them and I end up needing to lay [sic] down." (Tr. 56) Since taking Botox injections, the frequency of the migraines has reduced to two to four times a week. (Tr. 57) If she has a migraine, she needs to lie down 80% of the time. (Tr. 59)

Vocational expert Kathleen McAlpine testified at the hearing that someone with the claimant's age and vocational and educational background with no exertional limitations but

1 who "may frequently climb ramps and stairs, occasionally ladders, ropes or scaffolding, frequently balance, stoop, bend at the waist, kneel, crouch and crawl . . . [is limited to] less than occasional, seldom or rare exposure to hazards, such as machinery and heights . . . [whose] assigned work must be limited to simple, unskilled tasks which may be learned in 30 days or less, or by brief demonstrations . . . [and] must require less than occasional, seldom or rare contact with the public, and no more than occasional contact with coworker and supervisors" could not perform any of Nelson's past jobs. (Tr. 62) Such a person could, however, work as a packager, DOT (Dictionary of Occupational Titles) #920.587-018, stock clerk, DOT #922.687-058, or janitor cleaner, DOT #323.687-014. (Tr. 62)

*Medical Record*

In May of 2015, Raymond Novak, M.D., reviewed the medical record for the disability determination service and offered an opinion of Nelson's mental impairment. (Tr. 71) Novak considered the diagnosis of affective disorder. (Tr. 70) He then evaluated Nelson's "B" listing criteria, which gauge the severity of her limitations. *See* 20 C.F.R. § 404.1520a(c)(3). Novak found that Nelson has "mild" restrictions of activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 70) Novak further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of her functional limitations. (Tr. 70)

Novak completed a mental residual functional capacity assessment. (Tr. 73-75) He concluded that Nelson's ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to complete a normal workday and workweek, and ability to interact appropriately with the general public are moderately limited. (Tr. 74)

In May of 2015, John B. Kurtin, M.D., reviewed the medical record for the disability determination service and offered an opinion of Nelson's residual functional capacity. (Tr. 72-73) Kurtin opined that Nelson has no exertional limitations. (Tr. 72) She should only occasionally climb ladders, ropes, or scaffolds. *Id.* She should only frequently climb ramps and

1 | stairs. *Id.* She should avoid concentrated exposure to hazards such as machinery and heights.
2 | (Tr. 73)

3 | In October of 2015, on reconsideration, Alan Goldberg, Psy.D. and Nick J. Mansour, M.D., reviewed the medical record for the disability determination service. (Tr. 86-91) Goldberg's assessment was materially the same as Novak's. *Id.* Mansour's assessment was similar to Kurtin's with the additional limitations that Nelson should only frequently balance, stoop, kneel, crouch, or crawl. *Id.*

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, the claimant is presumed to be disabled, and no further inquiry is necessary. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Nelson "has not engaged in substantial gainful activity since January 31, 2013, the alleged onset date. . . ." (Tr. 34) At step two, she found Nelson "has the following severe impairments: (1) hypoglycemia, (2) migraine headaches, (3) depression and (4) anxiety. . . ." (Tr. 34)

At step three, the ALJ found Nelson "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."

The ALJ then analyzed Nelson's residual functional capacity (RFC). She found that Nelson has the following:

> [T]he residual functional capacity to perform a full range of work at all exertional levels but with certain nonexertional limitations. Specifically, [] the climbing of ramps and stairs must be limited to frequently while the climbing of ladders, ropes or scaffolds must be further limited to occasionally. Balancing, stooping (bending at the waist), kneeling, crouching, and crawling must be limited to frequently. Further, within the assigned work area, there must be less than occasional (seldom to rare), exposure to hazards, such as machinery and heights. In addition, assigned work must be limited to simple, unskilled tasks learned in 30 days or less or by brief demonstration. The assigned tasks must require less than occasional, seldom to rare, contact with the public and no more than occasional contact with coworkers and supervisors.

(Tr. 38)

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 5 -

1     At step four, the ALJ found that Nelson is unable to perform any past relevant work. (Tr. 40) At step five, the ALJ found, based on the testimony of the vocational expert, that considering her age, education, work experience, and residual functional capacity, Chapman could work as a packager, DOT #920.587-018, stock clerk, DOT #922.687-058, or janitor cleaner, DOT #323.687-014. (Tr. 42) Accordingly, the ALJ found that Nelson is not disabled.

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er] or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. § 423(d)(2)(A).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

Discussion

Nelson argues first that the ALJ improperly discounted her subjective testimony of disabling pain. She is correct; this action will be remanded for payment of benefits. The court does not reach Nelson's alternate claims of error.

"When an Administrative Law Judge (ALJ) determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing[2] reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Id*. at 489. "To ensure that . . . the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, . . . the ALJ [must] specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id*.

In this case, the ALJ analyzed Nelson's subjective testimony and offered specific reasons for discounting her testimony of disabling pain. The court examines those reasons in turn.

First, the ALJ stated that Nelson's subjective testimony should be discounted because clinical evidence does not support the severity of her symptoms. The ALJ stated as follows:

> While the claimant complains of severe migraine headaches, clinical findings fail to identify abnormalities corroborating the severity of the claimant's subjective complaints. The absence of corroborating evidence suggests the claimant's symptoms are not has severe as alleged. Physical examination confirms the claimant is well developed and nourished, in no acute distress and with no focal deficits.[3] Upon physical examination, the head and neck reveal no central pain,

---

[2] The Commissioner "maintains that this standard is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. s 405(g) and with agency regulations and ruling" but acknowledges that this is the standard in the Ninth Circuit. (Doc. 25, p. 6, n. 4)

[3] A "problem with nerve, spinal court, or brain function" that "affects a specific location such as the left side of the face, right arm, or even a small area such as the tongue." https://medlineplus.gov/ency/article/003191.htm.

> normal sensations, no increase in muscle tone or weakness and normal range of motion. Neurological examinations revealed no focal deficits and extra ocular movements are intact with no ptosis[4]. . . .

(Tr. 38) The ALJ's approach is contrary to the case law in the Ninth Circuit.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. at 1036 (punctuation modified) "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

"The claimant, however, need not show that her impairment could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (emphasis added). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id*. (emphasis added) In other words, "[o]nce the claimant produces medical evidence of an underlying impairment, the [ALJ] may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ found that objective medical evidence established that Nelson suffered from migraine headaches. She made no finding of malingering. Nevertheless, she discredited Nelson's testimony as to the severity of her symptoms because Nelson could not produce "clinical findings" of "abnormalities corroborating the severity of [her] subjective complaints." (Tr. 38) The ALJ's rationale is contrary to the law in the Ninth Circuit. A claimant is not

---

[4] "Ptosis is when the upper eyelid droops over the eye." https://aao.org/eye-health/diseases/what-is-ptosis.

required to produce objective evidence establishing the severity of her symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Thomas v. Colvin*, 2015 WL 4067147, at *7 (W.D. Pa. 2015) ("[M]igraine headaches cannot be detected by imaging techniques, laboratory tests, or physical examination.") (punctuation modified).

The second reason given by the ALJ for discounting Nelson's subjective testimony involves a suspicious lack of headache reports in the medical record. The ALJ's decision reads as follows:

> More importantly, despite the allegation of constant headaches, the evidence reflects the claimant's routine denial of headaches during review of systems. 7F/28, 41, 48, 76, 83, 94, 95. Such evidence suggests migraine headaches do not cause an impairment as severe as the claimant alleged.

(Tr. 38) At first blush, it might seem strange that a person afflicted with disabling migraine headaches should so often report that she has no headaches. An examination of these records, however, puts Nelson's "routine denial[s]" into some perspective.

The ALJ cites seven specific visits that Nelson made to her primary care provider. These treatments, however, were for complaints apart from her chronic migraine headaches. The record at 7F/28, for example, describes a medical procedure for "removal and reinsertion of intrauterine contraceptive device." (Tr. 497) The record does state that Nelson "denies dizziness, headaches, and weakness." (Tr. 497) But this denial is in a section that describes, in a general way, Nelson's overall health status. (Doc. 497) This section lists general denials of "fever, chills, abnormal weight gain, abnormal weight loss, fatigue, chest pain, palpitations," et cetera. (Tr. 497) In fact, that section lists in an entirely perfunctory manner some 20 different symptoms that Nelson "denies." (Tr. 497) Taken in context, it appears that this section is not meant to be a considered diagnosis of Nelson's migraine headaches. Instead, it is a survey of her acute symptoms designed to enable her physician to accurately and specifically diagnosis and treat the complaint for which Nelson seeks treatment on that particular day. In fact, on the first page of that medical record, 7F/25, the treating physician states that among Nelson's "Current Problems (verified)" there is still outstanding "Anxiety . . . Depression . . . Migraine . . . [and] Diabetes Mellitus." (Tr. 494) The fact that Nelson did

not complain of migraine headaches on a day that she sought treatment for her intrauterine contraceptive device is not particularly persuasive evidence for discounting her subjective testimony of disability.

The other six medical reports tell the same story. Record 7F/41 also contains a "denial" of "headaches" but on the first page of that report, the treating physician records "Migraine" in the "Current Problems (verified)" section." (Tr. 507, 510) On that day, Nelson was due for a "Follow-up Visit" for her "diabetes." (Tr. 507)

Records 7F/48, 76, 83, 94, and 95 also contain a denial of headaches but in the same medical report, the treating physician records "Migraine" as a current problem. (Tr. 516, 544, 550, 562) On those days, Nelson presented for a gynecological exam (vaginal discharge), a follow-up for flu shot and diabetes, DKA (diabetic ketoacidosis), and dizziness (Tr. 516, 544, 550, 562) The fact that Nelson did not complain of migraine headaches on those days that she sought medical treatment for a different condition is not strong evidence for discounting her subjective testimony of disability. *See, e.g., Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) ("[N]o reasonable person would expect a podiatrist seeing a patient who complains of foot problems to thoroughly examine the full range of that patient's hearing. . . .").

Later in her decision, the ALJ concedes that there is evidence of headaches in the medical record. (Tr. 30) She notes, however, that Nelson's "concentration and memory consistently was described as intact." (Tr. 39) (citing 16 locations in the medical record) Moreover, she notes that "the evidence reflects the claimant's routine denials of nausea." (Tr. 39) (citing 14 locations in the medical record) The ALJ considered these reports inconsistent with Nelson's "statements about the intensity, persistence, and limiting effects of [her] symptoms." (Tr. 39) Again, an examination of the medical record puts these reports into perspective.

As the court noted above, these notations tend to appear in the medical record in a section that lists Nelson's health status in a general way. They appear to be a type of preliminary screening that occurs as a matter of course before the treating physician actually attempts to diagnose and treat the particular condition that was the reason for Nelson's visit.

Accordingly, the fact that Nelson did not complain of migraine symptoms headaches on those days that she sought medical treatment for a different condition is not strong evidence for discounting her subjective testimony of disability.

Moreover, the ALJ does not account for the episodic nature of her symptoms. Nelson testified that, at the time of the hearing, she was getting migraines two to four times a week. (Tr. 57) That means, of course, that three to five days a week, she does not have a migraine. The medical record in this case contains more than five hundred pages of reports. (Tr. 267-813) Assuming Nelson was without migraines approximately half of the time, it is not particularly surprising that the medical record would contain numerous reports of days when Nelson was without nausea or without mental fuzziness. And, of course, the medical record would display a certain bias against recording migraine symptoms because if Nelson had a full-blown migraine, she would probably cancel her medical appointments for that day. The exception to that rule would be those days when her symptoms were so unbearable that she had to report to the emergency room for relief. The medical record indicates that she did so twice in January of 2013 and once in February of 2013. (Tr. 308-310, 335-339, 300-302)

In her response, the Commissioner argues that these records are "inconsistencies in the evidence" that depict "conflicts between [Nelson's] statements and the rest of the evidence." The court does not agree. It is not "inconsistent" for the medical record to contain reports of symptom-free days where the claimant alleges symptoms that wax and wane. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability.").

Another reason given by the ALJ for discounting Nelson's subjective testimony is her reported daily activities. (Tr. 39) According to the ALJ, Nelson "reported she makes foods, like French toast, spaghetti and tacos, watches television, reads, uses a computer and works on crochet projects throughout the day." (Tr. 39) The ALJ concluded that "[d]espite the

established impairments, the record reflects that claimant continues to engage in a somewhat normal level of daily activity and interaction with others." (Tr. 39) Later in her decision, the ALJ conceded that "I do acknowledge with prompting from the appointed representative, the claimant reported such activities were indeed limited when experiencing severe migraines." (Tr. 39) Nevertheless, she found that Nelson's statements "are largely inconsistent with objective medical findings and other evidence admitted into this record." (Tr. 39) The ALJ did not explain, however, why Nelson's ability to "engage in a somewhat normal level of daily activity" on those days when she *was not* having a migraine was relevant evidence on the severity of her limitations on those days when she *was* having a migraine. *See, e.g., Thomas v. Colvin*, 2015 WL 4067147, at *6 (W.D. Pa. 2015) ("Plaintiff's ability . . . to perform some limited household duties and hobbies when not experiencing migraines is not evidence that she is able to work full time day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.").

Finally, the ALJ referenced the third party function report completed by Nelson's mother, Wendy Nelson (Wendy). (Tr. 39) Wendy reported that Nelson "cares for her two children and animals." (Tr. 40) She further stated that Nelson "has no issues performing personal care," "manages her own finances and shops using the computer," and "takes her children bowling every Saturday." (Tr. 40) According to the ALJ, this report "provides insight into the claimant's activities as well as to the extent of her residual functional limitations." (Tr. 40) The ALJ did not, however, cite Wendy's numerous qualifying statements.

For example, Wendy stated that Nelson cares for two children, but she also said that Nelson "[t]ries to help them with everyday challenges, but most of the time she can't deal with them because of the migraines [and] depression." (Tr. 200) Wendy reported that Nelson has no problem with personal care, but she explained that "her migraines make her not want to." (Tr. 200) She further stated that Nelson does not prepare her own meals because "her migraines and depression make her not want to get out of bed." (Tr. 201) Wendy related that she and Nelson "take her kids bowling every Sat[urday] morn[ing] [and] every Sunday they come to our house." (Tr. 203) She then qualified her statement by saying that Nelson does these things "2

1  days a week when migraines allow." (Tr. 203) The court finds that Wendy's third party
2  function report is not particularly strong evidence for discounting Nelson's subjective testimony
3  of disability. The court concludes that while the ALJ has provided some evidence to discount
4  Nelson's subjective testimony of disabling limitations, she has not provided "clear and
5  convincing" evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). The
6  final decision of the Commissioner must be reversed.

7  Ordinarily, if the Commissioner is reversed, the court should remand for further
8  administrative proceedings. The court may, however, remand for payment of benefits if "(1)
9  the record has been fully developed and further administrative proceedings would serve no
10 useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting
11 evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited
12 evidence were credited as true, the ALJ would be required to find the claimant disabled on
13 remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

14 Here, all three requirements are fulfilled. "The record has been fully developed and
15 further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at
16 1020. As the Ninth Circuit observed in *Garrison*, "our precedent and the objectives of the
17 credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to
18 have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true
19 analysis." *Garrison v. Colvin*, 759 F.3d 995, 1021-1022 (9th Cir. 2014)

20 Second, the ALJ failed to provide specific, clear, and convincing reasons for discounting
21 Nelson's subjective testimony of the extent of her pain. *See Brown-Hunter v. Colvin*, 806 F.3d
22 487, 488–89 (9th Cir. 2015). Third, if Nelson's testimony were credited as true, she necessarily
23 would be found disabled. Nelson testified that she has migraines to two to four times a week
24 and she needs to lie down 80% of the time. (Tr. 57, 59) And the vocational expert testified that
25 no jobs would allow a person to miss work or leave early two times per week. (Tr. 63)

26 All three parts of the *Garrison* test are fulfilled. Furthermore, the court has examined
27 the entire record and finds no reason to seriously doubt that Nelson is disabled. *See Garrison*,
28 759 F.3d at 1022-23. Accordingly, this case will be remanded for payment of benefits. *See also*

- 13 -

*Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

    IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for payment of benefits.

    The Clerk of the Court is directed to prepare a judgment and close this case.

    DATED this 20th day of February, 2020.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge